# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAU KING CHAN, <br> Plaintiff, <br> v. <br> J.P. MORGAN CHASE, N.A., <br> Defendant. | CASE NO. 16cv2403-WQH-MDD <br> ORDER |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss the Second and Third Causes of Action of the Amended Complaint filed by Defendant J.P. Morgan Chase Bank, N.A. (ECF No. 21).

**I. Background**

On September 23, 2016, Plaintiff Sau King Chan initiated this action by filing a complaint (ECF No. 1) and motion for preliminary injunction (ECF No. 3). On September 29, 2016, Plaintiff filed the Amended Complaint, alleging four causes of action against Defendant J.P. Morgan Chase Bank, N.A.: (1) violations of the California Homeowner's Bill of Rights, pursuant to Cal. Civ. Code §§ 2923.6 and 2924.10(a)(4); (2) violations of the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), pursuant to Cal. Civ. Code § 1788, *et seq.*; (3) negligence; and (4) violations of California's Unfair Competition Law ("UCL"), pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.* (ECF No. 5).

On October 17, 2016, Plaintiff filed a motion for preliminary injunction. (ECF

No. 19). On November 1, 2016, Defendant filed the Motion to Dismiss the Second and Third Causes of Action of the Amended Complaint. (ECF No. 21). On November 18, 2016, Plaintiff filed a Notice of Withdrawal of Motion for Preliminary Injunction. (ECF No. 25). On November 18, 2016, the Court issued a minute order denying the motions for preliminary injunction (ECF Nos. 3, 19) as moot and stated that the Motion to Dismiss the Second and Third Causes of Action of the Amended Complaint (ECF No. 21) remains pending. (ECF No. 26).

**II. Allegations of the Amended Complaint (ECF No. 5)**

Plaintiff alleges that she "has been working with [Defendant] to obtain a modification of her mortgage loan for her home since 2013." (ECF No. 5 at ¶ 11). Plaintiff alleges that she attempted to modify her mortgage loan with Defendant on four separate occasions. *Id.* at ¶¶ 13-36.

Plaintiff alleges that on or about July 23, 2014, after she "submitted a full modification package" in 2013 "and complied with all of [Defendant's] supplemental documentation requests[,]" Defendant sent her a letter indicating "that [Defendant] was unable to verify her income, employment, assets, identity and/or occupancy in the property based on the information provided." *Id.* at ¶¶ 13-14. Plaintiff alleges that she submitted a second loan modification application to Defendant in August 2014. *Id.* at ¶ 16. "On or about March 4, 2015, after spending months complying with [Defendant's] multiple requests for information regarding her income, employment and occupancy, [Plaintiff] received a letter from [Defendant] indicating that she did not qualify for a loan modification due to [Defendant's] inability to verify her income, employment, assets, identity and/or occupancy in the property based on the information provided." *Id.* at ¶ 17. Plaintiff alleges that she "immediately requested an escalation of the denial after receiving it" and that her request "was denied because [Defendant] could not verify income[.]" *Id.* at ¶ 18.

Plaintiff alleges that after she submitted her third loan modification application on May 21, 2015, Defendant "indicated in a phone call [on October 19, 2015] that it

needed an entire updated loan modification application, as the previous application had expired, it refused to consider the existing loan modification request further and insisted [Plaintiff] start the entire loan modification process over again." *Id.* at ¶¶ 20-21.

Plaintiff alleges that on or around August 13, 2015, Defendant "sent a letter to [Plaintiff] (signed by her single point of contact for the loan modification) purporting that [Plaintiff] had informed [Defendant] that she no longer wished to keep her home[,]" and that "[d]espite [Plaintiff] repeatedly insisting she wanted to keep her home, [Defendant] had her in the short sale department." *Id.* at ¶ 20 n.1. Plaintiff contends that she "repeatedly . . . tried to clarify the issue and have the short sale department not pursue foreclosure while she was actively pursuing a loan modification." *Id.*

Plaintiff alleges that she submitted a fourth loan modification application to Defendant on or around November 12, 2015 with "202 pages of supporting documentation[,]" including a financial hardship letter, various years of tax return information, and lease agreements for her rental properties. *Id.* at ¶¶ 22-23. Plaintiff alleges that she "received confirmation the application was complete via telephone, on or around December 15, 2015." *Id.* at ¶ 25. Plaintiff alleges that "[o]n or around December 30, 2015, despite [Plaintiff's] active modification review, [Defendant] reinitiated foreclosure proceedings by recording a Notice of Default against [Plaintiff's] property." *Id.* at ¶ 26. Plaintiff alleges that between January and April 2016, she submitted additional documentation to [Defendant] in response to "requests for additional information in support of her loan modification application." *Id.* at ¶¶ 29-35. Plaintiff alleges that on or around June 9, 2016, Defendant denied her fourth loan modification request, stating that it "could not verify your income, employment, assets, identity, and/or property occupancy based on the information you provided." *Id.* at ¶¶ 36-39.

Plaintiff alleges that on July 6 and July 8, 2016, she contacted Defendant by telephone and that no representative she spoke with "could provide the actual basis for the denial" of her fourth modification request. *Id.* at ¶¶ 41-42. Plaintiff alleges that

1 | Defendant sent her a letter dated August 5, 2016 in response to Plaintiff's appeal, but the "letter raised income and occupancy issues [Defendant] never mentioned during the loan modification review." *Id.* at ¶¶ 44-48. Plaintiff alleges that Defendant "provide[d Plaintiff] with a notice of trustee sale set for October 28, 2016[,]" and that Defendant "recorded the Notice of Trustee Sale, on or around September 15, 2016." *Id.* at ¶ 50.

**III. Defendant's Request for Judicial Notice (ECF No. 21-2)**

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). "[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted); *see also United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records").

Defendant requests that the Court take judicial notice of five documents: (1) the Deed of Trust recorded on June 19, 2006; (2) the Substitution of Trustee recorded on February 11, 2014; (3) the Corporate Assignment of Deed of Trust recorded on February 11, 2014; (4) the Notice of Default and Election to Sell Under Deed of Trust recorded on December 30, 2015; and (5) the Notice of Trustee's Sale recorded on September 15, 2016. (ECF No. 21-2 at 2). Defendant has demonstrated that each of the documents in its Request for Judicial Notice have been recorded in the office of the San Diego County Recorder. *See*, *e.g.*, *Fimbres v. Chapel Mortg. Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, at *3 (S.D. Cal. Nov. 20, 2009) (Gonzalez, C.J.) (taking judicial notice of Deed of Trust, Substitution of Trustee, Assignment of Deed of Trust, Notice of Default, and Notice of Trustee's Sale recorded in county recorder's office). The Court grants Defendant's Request for Judicial Notice (ECF No. 22-1), and the Court takes judicial notice of the five documents listed in the request.

**IV. Defendant's Motion to Dismiss the Second and Third Causes of Action of the Amended Complaint (ECF No. 21)**

    **A. Second Cause of Action: RFDCPA Claim**

        **i. Contentions of the Parties**

Defendant contends that Plaintiff fails to state a cognizable claim under the RFDCPA because Defendant "is not a 'debt collector' as defined under the RFDCPA." (ECF No. 21-1 at 4). Defendant contends that "reviewing a borrower for a loan modification does not subject the servicer to the RFDCPA." (ECF No. 28 at 3). Defendant contends that the RFDCPA does not "appl[y] to a bank's activities with regard to a trial payment plan and [loan] modifications" when, as in this case, "no [trial payment plan] was offered and no modification was guaranteed." *Id.* at 4.

Plaintiff contends that "Courts have repeatedly held that a mortgage servicer is acting as a debt collector when it is engaging in loan modification reviews." (ECF No. 27 at 12). Plaintiff contends that the definition of a "debt collector" under the RFDCPA "is intentionally broader than the definition of a debt collector in the" federal Fair Debt Collections Practices Act because the RFDCPA "applies to both third-party debt collectors as well as original creditors collecting debts." *Id.* Plaintiff contends that Defendant's "interactions with [Plaintiff] regarding the modification review of her mortgage loan" constitute debt collection under the RFDCPA. *Id.* at 14.

        **ii. Analysis**

As a threshold requirement to establishing a valid claim under the RFDCPA, a defendant must fall within the RFDCPA's definition of a "debt collector[.]" *See Schrupp v. Wells Fargo Bank, N.A.*, CIV. NO. 2:16-00636 WBS KJN, 2016 WL 3753326, at *6 (E.D. Cal. July 13, 2016). The statute defines a "debt collector" as

> any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law.

Cal. Civ. Code § 1788.2(c). The term "debt collection" is defined in the RFDCPA as

"any act or practice in connection with the collection of consumer debts." Cal. Civ. Code. § 1788.2(b). In *Corvello v. Wells Fargo Bank, NA*, the Court of Appeals found that a bank "was engaged in debt collection" under the RFDCPA. 728 F.3d 878, 885 (9th Cir. 2013) (per curiam). The Court of Appeals found that the bank was engaged in debt collection under the definition of the statute because the bank offered the plaintiff a trial payment plan in the course of loan modification discussions. *Id.* The Court of Appeals stated that the bank's offer of a trial payment plan to the plaintiff, concurrent with the bank's demand for trial payments, "was more than an informational circulation" that rose to the level of "engag[ing] in debt collection." *Id.*

Federal district courts in California have applied the reasoning of *Corvello* to determine that banks are not categorically excluded from being considered "debt collector[s]" under the RFDCPA; rather, courts must determine whether the plaintiff has alleged facts sufficient to demonstrate that the bank was engaged in debt collection activities that fall outside of the ordinary foreclosure process. *See Harris v. Bank of Am. Corp.*, No. 13–cv–01751 DMG (OPx), 2014 WL 1116356, at *9 (C.D. Cal. Mar. 17, 2014) (stating that in *Corvello*, "the Ninth Circuit did not question the application of the Rosenthal Act to a bank's activities in regard to a [trial payment plan] and loan modification. . . . Thus, courts have reasoned that a mortgage servicer may be a debt collector under the Rosenthal Act.") (quotation marks omitted); *see also Webb v. Bank of Am., N.A.*, No. 2:13–cv–02006–MCE–AC, 2013 WL 6839501, at *6 (E.D. Cal. Dec. 23, 2013); *Schrupp*, 2016 WL 3753326, at *6-7.

Each case following *Corvello* that has found a bank satisfies the definition of a "debt collector" under the RFDCPA required a finding that the bank made statements or engaged in acts that were so misleading or deceptive such that the bank was engaged in debt collection activities outside of the ordinary foreclosure process. *See Reyes v. Wells Fargo Bank, N.A.*, No. C–10–01667 JCS, 2011 WL 30759, at *20 (N.D. Cal. Jan. 3, 2011) (determining that "allegedly deceptive statements" were "beyond the scope of the ordinary foreclosure process[,]" including that the bank enclosed "the words 'good

news' at the beginning of the letter" and "the statement that foreclosure counsel would be instructed to delay foreclosure proceedings as long as the recipients made timely payments under the Agreement"); *Webb*, 2013 WL 6839501, at \*6 (finding the "[d]efendant's debt collection activities f[ell] outside of the normal foreclosure process, as is required to proceed with a cause of action under the Rosenthal Act" based upon allegations that the defendant "regularly sent mortgage bills to [the p]laintiff and [the p]laintiff made her mortgage payments to [the d]efendant"); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp.2d 1110, 1164-65 (N.D. Cal. 2013) (finding the defendant was a "debt collector" under the RFDCPA because the defendant allegedly "induced [the plaintiff] to pay over $40,000 by leading him to believe he would be considered for a loan modification prior to refusing to accept payments unless he could pay an additional $138,440.").

In this case, Plaintiff has failed to allege specific facts that support the inference that Defendant, while evaluating Plaintiff's loan modification applications, acted beyond the scope of the ordinary foreclosure process. *C.f. Schrupp*, 2016 WL 3753326, at \*7 (citing *Corvello*, 728 F.3d at 885). Plaintiff alleges that Defendant denied three of Plaintiff's four loan modification attempts on the basis that Defendant was unable "**to verify [Plaintiff's] income, employment, assets, identity and/or occupancy in the property based on the information provided**." (ECF No. 5 at ¶¶ 14, 17, 39, 41). Plaintiff's May 2015 loan modification application was not accepted by Defendant on the ground that it "had expired," and Defendant "insisted [Plaintiff] start the entire loan modification process over again." *Id.* at ¶ 21. When Plaintiff sought to communicate with Defendant following the fourth loan modification denial, representatives of Defendant were allegedly unable to verify "the actual basis for the denial" of Plaintiff's modification application. *Id.* at ¶ 42. Based on the allegations in the Amended Complaint, the Court cannot conclude that these communications rise to the level of "misleading" or "deceptive" such that Defendant's actions fell outside of the normal foreclosure process.

Defendant's motion to dismiss Plaintiff's second cause of action under the RFDCPA on the ground that Defendant is not a "debt collector" under the RFDCPA is GRANTED.

### B. Third Cause of Action: Negligence Claim

#### i. Contentions of the Parties

Defendant contends that Plaintiff fails to state a cognizable negligence claim because "[Defendant] owed no duty of care to Plaintiff while reviewing her for a possible loan modification." (ECF No. 21-1 at 7). Defendant contends that "the weight of authority sides with the position that negligence cannot be based on a loan modification review" and that "a loan servicer" does not owe "a duty to a borrower while conducting a loan modification[.]" *Id.* at 2; ECF No. 28 at 5. Defendant contends that "the majority of the courts in the Ninth Circuit" hold that there is no "'common law duty to offer or approve a loan modification.'" (ECF No. 21-1 at 6) (citation omitted). Defendant contends that Plaintiff has not alleged that Defendant made a specific misrepresentation to Plaintiff regarding the likelihood of a loan modification, nor did Defendant "step out of its role as a normal lender[.]" (ECF No. 28 at 5).

Plaintiff contends that case precedent "does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." (ECF No. 27 at 15). Plaintiff contends that case precedent supports a finding that "a duty of care [is] owed by a lender to a borrower to exercise reasonable care in processing loan modifications applications once they undertake such a review." *Id.* Plaintiff contends that to determine whether a lender owes a duty of care to a borrower in the context of a loan modification requires balancing six factors identified by the California Supreme Court. Plaintiff contends that Defendant breached its duty of care "by failing to communicate accurately and in a timely fashion with [Plaintiff] regarding her loan modifications" and by making "several misrepresentations to [Plaintiff] regarding the status of her modification application and the documents it needed to complete review of her modification application." *Id.* at 17.

### ii. Analysis

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 78 Cal. Rptr.2d 525, 528 (Ct. App. 1998). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 12 Cal. Rptr.3d 846, 852 (Ct. App. 2004). In California, the test for determining whether a financial institution owes a duty of care to its borrower-client involves the balancing of various factors, referred to as the *Biakanja* factors, "among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 283 Cal. Rptr. 53, 58 (Ct. App. 1991) (quoting *Connor v. Great Western Sav. & Loan Ass'n*, 447 P.2d 609, 617 (Cal. 1968); *Biakanja v. Irving*, 320 P.2d 16, 19 (Cal. 1958)). "*Biakanja* . . . is the leading California case discussing whether a legal duty should be imposed absent privity of contract." *Giacometti v. Aulla, LLC*, 114 Cal. Rptr.3d 724, 727 (Ct. App. 2010).

However, "for purposes of a negligence claim, 'as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" *Das v. Bank of America, N.A.*, 112 Cal. Rptr.3d 439, 450 (Ct. App. 2010) (quoting *Nymark*, 283 Cal. Rptr. at 56). "[A] loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role of a lender of money." *Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr.3d 804, 820 (Ct. App. 2013). In *Lueras*, the California Court of Appeal disagreed with prior case precedent "suggest[ing] a residential lender owes a common law duty of care

to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives." *Id.*

"However, '[e]ven when the lender is acting as a conventional lender, the no-duty rule is only a general rule.'" *Alvarez v. BAC Home Loans Servicing, L.P.*, 176 Cal. Rptr.3d 304, 307 (Ct. App. 2014) (quoting *Jolley v. Chase Home Fin., LLC*, 153 Cal. Rptr.3d 546, 570 (Ct. App. 2013). The California Court of Appeal has recently stated that, despite this "general rule[,]" courts should determine whether "a lender may owe a duty of care to a borrower based on the *Biakanja* factors, despite the fact that the lender was acting as a conventional lender." *Daniels v. Select Portfolio Servicing, Inc.*, 201 Cal. Rptr.3d 390, 418-19 (Ct. App. 2016).

Plaintiff relies upon *Alvarez* to establish that Defendant owed Plaintiff "a duty to accurately and fairly process Plaintiff's loan modification applications" after Defendant allegedly "accept[ed] Plaintiff's loan modification applications, and agree[d] to review Plaintiff under the [Home Affordable Modification Program.]" (ECF Nos. 5 at ¶ 79; 27 at 14-15). In *Alvarez*, the California Court of Appeal found that the *Baikanja* factors weighed in favor of imposing a duty on the defendants in part because the defendants had specifically mishandled the plaintiffs' documents. In *Alvarez*, the plaintiff identified specific mishandling of her documents in the course of reviewing her loan modification applications. *See Alvarez*, 176 Cal. Rptr.3d at 306-07 (the defendants allegedly breached "a duty to exercise reasonable care in the review of [the plaintiffs'] loan modification applications once they had agreed to consider them[,]" including one allegation that a plaintiff "was told by an employee of defendants named in the complaint that his application for modification of the loan secured by his primary residence had been rejected because his monthly gross income of $2,554.75 was inadequate, whereas his paystubs showed that his monthly gross income was $6,075.").

In this case, the Court concludes that Plaintiff's allegations are not sufficient to demonstrate that Defendant owed a duty of care when weighing the *Baikanja* factors. The facts alleged in the Amended Complaint do not demonstrate that Defendant's

involvement in Plaintiff's applications for a loan modification exceeded the scope of Defendant's conventional role of a lender of money. *See Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12cv2106–WQH–KSC, 2016 WL 1170821, at *6-7 (S.D. Cal. Mar. 24, 2016) (Hayes, J.) ("The Court finds that Plaintiff's factual allegations are not sufficient to conclude that Defendants agreed to consider Plaintiff's loan modification, thereby creating a duty of care."); *Hernandez v. Select Portfolio, Inc.*, No. CV 15–01896 MMM (AJWx), 2015 WL 3914741, at *22 (C.D. Cal. June 25, 2015) (reviewing conflicting case precedent to conclude "that a lender that agrees to consider a borrower's loan modification application does not act outside its conventional role as a money lender and does not owe a duty of care.").

The Court finds that *Alvarez* is distinguishable from this case. Plaintiff has failed to allege facts sufficient to support the inference that Defendant mishandled her loan modification application documents after an agreement to consider Plaintiff's modification application, or that Defendant acted in a way that caused it to fall outside of its conventional role as a money lender. *See Garcia v. Ocwen Loan Servicing, LLC*, No. C 10–0290 PVT, 2010 WL 1881098, at *1, 3 (N.D. Cal. May 10, 2010) (finding duty of care between bank and borrower "in processing [the p]laintiff's loan modification application" when "[u]pon receipt of the requested documents, unbeknownst to [the p]laintiff or his agent, [the d]efendant routed the documents to the wrong department. Instead routing the documents to its Home Retention Department, [the d]efendant's employee routed them to its Short Sale Department.").

Plaintiff also relies upon *Jolley* to establish that Defendant owed Plaintiff a duty of care during the loan modification application process. In *Jolley*, the California Court of Appeal resolved a negligence claim arising from a construction loan that obligated the bank to disburse funds during the project. The lender had allegedly breached its obligation to disburse funds during the project because the lender allegedly "lost the loan documents, which held up construction financing for approximately eight months." *Jolley*, 152 Cal. Rptr.3d at 551. The court concluded that there was a triable issue of

fact as to whether the lender was negligent, and stated that "*Nymark* . . . do[es] not purport to state a legal principle that a lender can never be held liable for negligence in its handling of a loan transaction within its conventional role as a lender of money." *Id.* at 570, 574 (quoting *Ottolini v. Bank of Am.*, No. C–11–0477 EMC, 2011 WL 3652501, at *6 (N.D. Cal. Aug. 19, 2011) (quotation marks omitted). The court further stated that,

> We note that we deal with a construction loan, not a residential home loan where, save for possible loan servicing issues, the relationship ends when the loan is funded. By contrast, in a construction loan the relationship between lender and borrower is ongoing, in the sense that the parties are working together over a period of time, with disbursements made throughout the construction period, depending upon the state of progress towards completion.

*Id.* at 570. The Court finds *Jolley* to be inapposite to this case, which involves a residential home loan and related loan servicing and modification issues. *See also Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12cv2106–WQH–NLS, 2013 WL 5568737, at *4 (S.D. Cal. Oct. 3, 2013) (Hayes, J.). *See also Benson v. Ocwen Loan Servicing, LLC*, 562 Fed. Appx. 567, 569 (9th Cir. 2014) (finding the duty of care imposed by the *Jolley* court "does not apply in the residential loan context"). The Court concludes that Plaintiff has failed to allege facts sufficient to support the inference that Defendant "had a duty to accurately and fairly process Plaintiff's loan modification applications." (ECF No. 5 at ¶ 79).

The Court further concludes that Plaintiff has failed to plead a cognizable claim for negligence on the ground that Defendant breached a duty by making "specific misstatements and misrepresentations to her, assuring her that loan modification applications were complete and that she would be reviewed for a modification." (ECF No. 27 at 15). In *Lueras*, the California Court of Appeal identified that "a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale." 163 Cal. Rptr.3d at 821. However, to state a cognizable negligence claim based on a breach of a duty to not make material misrepresentations during the loan

1 modification application process, it must be "foreseeable that a borrower might be
2 harmed by an inaccurate or untimely communication about a foreclosure sale or about
3 the status of a loan modification application, and the connection between the
4 misrepresentation and the injury suffered could be very close." *Id.*

5 In this case, Plaintiff alleges the existence of an inaccurate communication dated
6 August 13, 2015, when Defendant

> 7 sent a letter to Ms. Chan (signed by her single point of contact for the loan modification) purporting that Ms. Chan had informed Chase that she no
> 8 longer wished to keep her home. The assertion she no longer wanted the home she had been fighting so hard to keep was pure fiction. Despite Ms.
> 9 Chan repeatedly insisting she wanted to keep her home, Chase had her in the short sale department. Ms. Chan repeatedly, through her attorney,
> 10 tried to clarify the issue and have the short sale department not pursue foreclosure while she was actively pursuing a loan modification.
> 11

12 (ECF No. 5 at ¶ 20 n.1).[1] Assuming the existence of this letter, the Court concludes that
13 Plaintiff has failed to allege facts to support the inference that Plaintiff "might be
14 harmed by an inaccurate or untimely communication about a foreclosure sale or about
15 the status of a loan modification application[.]" *Lueras*, 163 Cal. Rptr.3d at 821.
16 Plaintiff does not allege that she relied on this alleged misrepresentation and suffered
17 damage as a result. Rather, Plaintiff alleges that following her receipt of this letter, she
18 "repeatedly . . . through her attorney, tried to clarify the issue and have the short sale
19 department not pursue foreclosure while she was actively pursuing a loan
20 modification." (ECF No. 5 at ¶ 20 n.1).

21 Defendant's motion to dismiss Plaintiff's third cause of action for negligence is
22 GRANTED.
23 ///

24 **V. Conclusion**

25 IT IS HEREBY ORDERED that the Motion to Dismiss the Second and Third
26 Causes of Action of the Amended Complaint filed by Defendant (ECF No. 21) is

27 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28 [1] Plaintiff does not include a copy of this alleged letter in the Amended Complaint or in her response to Defendant's Motion to Dismiss the Second and Third Causes of Action of the Amended Complaint.

GRANTED. Plaintiff's second and third causes of action in the Amended Complaint are DISMISSED without prejudice.

DATED: May 5, 2017

**WILLIAM Q. HAYES**
United States District Judge